561 N.E.2d 502 (1990)
In the matter of the Paternity of Justin Lavel Humphrey.
Joseph Humphrey, Appellant (Respondent below),
v.
ANNETTE WOODS, Appellee (Petitioner below).
No. 45A03-9002-JV-47.
Court of Appeals of Indiana, Third District.
October 23, 1990.
Rehearing Denied February 22, 1991.
David Paul Allen, Hammond, for appellant.
Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.
STATON, Judge.
Joseph Humphrey appeals from a court order requiring him to pay $155.00 weekly plus medical insurance premiums for the benefit of his infant son, Justin Humphrey. The issues which he presents for our review are restated as follows.
I. Did Humphrey effectively rebut the presumption that the Indiana Child Support Guideline amount is the correct amount of support for Joseph?
II. Does an assignment of child support to the Indiana Department of Welfare operate as an unconstitutional taking of property from the obligor to the extent that such assigned amounts exceed the amount issued by the Department of Welfare for the benefit of the obligor's child?
Reversed.

I.

Rebuttal of Presumptive Support Payment Amount
The hearing at which Humphrey's support obligation was determined took place on October 2, 1989, one day after the effective date of the Indiana Child Support Guidelines ("Guidelines"). The Guidelines provide that child support awards determined by use of the Schedules approved by the Indiana Supreme Court are presumptively correct. The Guidelines anticipate some flexibility; if a judge finds that application of the presumptive amount would be unreasonable, unjust or inappropriate, he may deviate from the Schedule amount. See Guideline 1.
Humphrey's available weekly income as defined by the Guidelines is $1,035.00. Annette Woods, the mother of Humphrey's child, receives only "means-tested" income (consisting of AFDC payments, food stamps and rent subsidy). Means-tested income is not considered income available for parental support of children under the Guidelines; therefore, the "combined weekly available income" is $1,035.00. At this income level, the Guidelines provide that $155.00 weekly is the "presumptive" basic *503 child support obligation. One hundred percent of the $155.00 obligation was allocated to Humphrey; nothing was allocated to Woods.
Humphrey asserts that he presented sufficient evidence to rebut the presumption that $155.00 was the appropriate amount of support to be paid by him. He presented evidence of a wide disparity between Woods' actual expenditures on behalf of Justin, and the presumptive amount. This evidence consisted largely of Woods' testimony at the support hearing.
Woods' household consists of herself and four children.[1] Prior to Justin's birth, Woods' monthly household expenses were $516.00; following Justin's birth, this amount increased to $615.00. Her monthly household income consists of a $405.00 AFDC payment, $252.00 in food stamps and $50.00 disbursed to her pursuant to 42 U.S.C. § 657(b).[2]
Humphrey maintains that Justin, as the fourth child in Woods' family, created minimal additional expense. He asserts that the Income Shares Model underlying the Guidelines recognizes that each subsequently born child in an intact household produces fewer expenses than a firstborn child. He believes that the support ordered for Justin should reflect the circumstances of his birth, i.e., that he is the fourth child in the household and that the amount of income available for expenditure on his behalf will be limited by AFDC guidelines so long as Woods remains an AFDC recipient.[3]
Humphrey argues that the crucial inquiry in determining child support is the needs of the child. Beeson v. Beeson (1989), Ind. App., 538 N.E.2d 293. He contends that he rebutted the presumption of the Guidelines by showing that Woods' expenditures on behalf of Justin were approximately 1/6 of the Guideline amount. In fact, the court-ordered amount of child support for Justin exceeds Woods' entire household income for five persons.
Humphrey argues that all the circumstances surrounding a support order are to be considered, and not just the non-custodial parent's income. IC 31-6-6.1-13 requires a paternity court to consider "all relevant factors" on the issue of child support, including (1) the financial resources of the custodial parent; (2) the standard of living the child would have enjoyed had the parents been married and remained married to each other; (3) the physical and mental condition of the child and his educational needs; and (4) the financial resources and needs of the custodial parent.
Evidence relative to each of these factors was presented at the support hearing. With regard to Woods' resources, the trial court noted only that her income was "means-tested" and "insufficient" to meet her family's needs. The court did not, however, consider the restrictions imposed on Woods' receipt of welfare income. Woods is required, pursuant to 42 U.S.C. § 602(a)(26), to assign her right to receive child support payments to the State Department of Welfare as a condition of her receipt of AFDC. Under the provisions of 42 U.S.C. § 657(b), no support funds exceeding $50.00 per month will be disbursed to her for the benefit of any child until the AFDC payments to her entire household are reimbursed. Therefore, much of Humphrey's court-ordered payment does not reach Justin for his support.
Amounts which cannot possibly benefit an obligor's child are not ordered in accordance with the purposes of the Guidelines. Child support payments are to be used solely for the benefit of the child entitled to receive the payments.[4] IC 31-1-11.5-14(b).
Humphrey correctly asserts that a trial court, when applying the Guidelines in conjunction with consideration of the factors specified by IC 31-6-6.1-13, is to consider the needs of the child of primary importance. *504 Stutz v. Stutz (1990), Ind. App., 556 N.E.2d 1346, 1352. The Stutz court invalidated a trust where payments would not be used for the benefit of the child during her minority. The court stated that the method of disbursement bore no relation to the child's actual need. Id. at 1352-53. The court further opined that child support should be based on the needs of the child, but these needs are to be considered in light of all the circumstances of the case. Id. at 1352.
One of the objectives of the Guidelines is to provide consistency in support awards. Reasonable variations between Schedule amounts and amounts actually expended per child will frequently occur and should not automatically justify a court's deviation from the Schedule amount in issuing support orders. However, the presumptive amount may be effectively rebutted where, as here, an obligor shows that a sizeable portion of the presumptive amount cannot possibly reach his or her child under existing circumstances.
Additionally, we note that child support orders are modifiable. McCallister v. McCallister (1986), Ind. App., 488 N.E.2d 1147. Should Justin's circumstances change in the future, Woods is not without remedy to obtain increased support payments for his benefit.

II.

Constitutionality of Assignment Scheme
Humphrey next contends that the assignment scheme of 42 U.S.C. § 602(a)(26) operates as an unconstitutional taking of his property to the extent that the assigned funds exceed the amount benefitting his dependent. The disposition of Issue I herein renders our consideration of Humphrey's constitutional challenge unnecessary.
Reversed and remanded with instructions to re-calculate support payments.
GARRARD and CHEZEM, JJ., concur.
NOTES
[1] Only Justin was fathered by Humphrey.
[2] The first $50.00 of child support paid each month is disbursed to Woods directly.
[3] Ms. Woods testified that she had no immediate plans to seek employment. She was last employed in 1981.
[4] An assignment of support payments under the Social Security Act is permitted.