In the Matter of the PATERNITY OF Justin Lavel HUMPHREY.

Joseph HUMPHREY, Appellant (Respondent Below),

v.

Annette WOODS, Appellee (Petitioner Below).

No. 45S03–9112–CV–1005.

Supreme Court of Indiana.

Dec. 20, 1991.

David Paul Allen, Hammond, for appellant.

Linley E. Pearson, Atty. Gen., and Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

ON PETITION TO TRANSFER

SHEPARD, Chief Justice.

Did the trial court err in ordering appellant Joseph Humphrey to pay the presumptive amount of child support called for by our state's guidelines? The Court of Appeals answered this question in the affirmative. *Matter of Paternity of Humphrey* (1990), Ind.App., 561 N.E.2d 502. With that particular conclusion, we agree. We reject the theory on which the Court of Appeals decided the case, however, and grant transfer.

Justin Humphrey was born February 19, 1989. His parents are Joseph Humphrey and Annette Woods. They were never married. Woods has custody of Justin. She also has three other children, who were fathered by other men. Woods has been unemployed since 1981. She and her four children live in subsidized housing, paying eight dollars a month in rent. They have a *monthly* household income of $707, consisting of $405 in AFDC payments, $252 in food stamps, and $50 disbursed to her pursuant to 42 U.S.C. § 657(b),[1] a federal reimbursement scheme.

Humphrey is employed. As required by the rules of this Court, the trial judge used the Indiana Child Support Guidelines to determine the amount of support Humphrey should pay.[2] Humphrey's available weekly income as defined by the support guidelines is $1,035. At this income level, the guidelines call for a presumptive amount of $155 *a week* in child support. The trial court found the presumption unrebutted and ordered Humphrey to pay support of $155 a week. Humphrey claims on appeal that under the circumstances, the trial court erred when it failed to deviate from the presumptive amount of support.

Our rules declare that a trial court *shall* deviate from the presumptive amount determined under the guidelines when it concludes "that the amount of the award reached through application of the guidelines would be unjust." Ind. Child Support Rule 3. The Commentary accompanying Support Guideline 1 also advises judges to "avoid the pitfall of blind adherence to the computation for support without giving careful consideration to the variables that require a varying of the result in order to do justice." Ind. Child Support Guideline 1, Commentary, *Indiana Rules of Court, State and Federal, 1991,* 287.

## Standard of Review

■ This case presents our first opportunity since the support guidelines became effective October 1, 1989, to explore the appropriate standard of appellate review of support orders. Our Court of Appeals has considered a similar question in reviewing "division of property" rulings in dissolution cases. It has concluded that in reviewing deviations from the "50–50" presumption in division of property cases, the decision of the trial court should be affirmed unless the court on appeal is persuaded that the trial court's determination is clearly erroneous. *In Re Marriage of Davidson* (1989), Ind.App., 540 N.E.2d 641, 645. ("Reversal is merited only where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the trial court.")

Because trial courts must utilize the same mode of analysis whether dividing property or determining support (i.e., starting with a rebuttable presumption and setting forth reasons for any deviation), we conclude that the same standard of review ought to prevail. Thus, we will disturb a trial court's support order only when it is clearly erroneous.

## Presumption Rebutted

■ The gravamen of Humphrey's complaint is that through the combined workings of the support guidelines and welfare reimbursement rules, he is being required to support children who are not his own. He is correct, and the reality of that is adequate grounds for deviation from the guideline amount.

Woods must assign any child support payments due her, pursuant to 42 U.S.C. § 602(a)(26). Of the nearly $700 a month that Humphrey pays, under the provisions of 42 U.S.C. § 657(b) only $50 per month is

1. Because Woods receives AFDC benefits, she must assign all child support monies to the Indiana Department of Public Welfare. The first $50 of child support is then disbursed to her; any remaining amounts are retained by the welfare department as reimbursement for AFDC benefits previously conferred. The net effect of this federally mandated reimbursement scheme has brought the parties before us today.

2. Ind. Child Support Rule 2 provides: "In any proceeding for the award of child support, there shall be a rebuttable presumption that the amount of the award which would result from the application of the Indiana Child Support Guidelines is the correct amount of child support to be awarded."

disbursed directly to Woods.[3] The remainder is retained by the welfare department, as reimbursement for AFDC benefits she receives.[4] There will not be any further direct distribution to her until the AFDC payments *to her entire household* are reimbursed. (Brief of Appellee at 16). Under this system, $50 per month of Humphrey's payment goes to support Justin and part of it serves to reimburse the AFDC program for money it has spent on Justin's behalf. Much of Humphrey's court-ordered payment, however, goes to reimburse the AFDC program for money it has spent to provide for three children Humphrey did not father.

These facts as a matter of law rebut the presumption that $155 a week was the correct amount of child support to be awarded in this case. Humphrey has no legal obligation to support any children other than his own. *Grossman v. Lauber and Another* (1868), 29 Ind. 618, 620; *Pilgrim v. Pilgrim* (1947), 118 Ind.App. 6, 75 N.E.2d 159; *Treschman v. Treschman* (1901), 28 Ind.App. 206, 61 N.E. 961, 962. *See also* Ind.Code § 31–6–6.1–10(a) (West Supp.1991) (hearing required on *support, custody,* and *visitation* "[u]pon finding that a man is the child's *biological father*") (emphasis added). Humphrey's showing that the presumptive amount leads to requiring him to support children who are not his renders the trial court's use of the presumptive amount clearly erroneous.

The Court of Appeals held that "the presumptive amount may be effectively rebutted where, as here, an obligor shows that a sizeable portion of the presumptive amount *cannot possibly* reach his or her child under existing circumstances." 561 N.E.2d at 504. While the Court of Appeals did not instruct the trial court to order Humphrey to pay a specified amount, the State reasonably construes the holding to mean Humphrey should pay only $50 a month in support—the amount reaching Woods through the welfare department disbursements. The State also contends that if the Court of Appeals decision is upheld and obligors such as Humphrey are allowed to pay only $50 a month, the State will suffer multi-million-dollar penalties for non-compliance with Title IV–D, which explicitly requires a plan for reimbursement of AFDC benefits from assigned child support payments (see 42 U.S.C. §§ 654, 657). Our decision today should alleviate those fears, for Humphrey will be required to reimburse the government for AFDC payments made to Woods for Justin's care, just as the father or fathers of Woods' other children must do if paternity is established and support ordered.

The fact that Woods is on AFDC does not mean that Humphrey's responsibility to his child is different from that of any other parent. The AFDC reimbursement system is not grounds for leaving taxpayers to foot the bill for most of Justin's support.

---

**3.** 42 U.S.C. § 657(b) provides in pertinent part that amounts collected as child support by a State shall be distributed as follows:

(1) of such amounts as are collected periodically which represent monthly support payments, the first $50 of any payments for a month received in that month, ... shall be paid to the family without affecting its eligibility for assistance or decreasing any amount otherwise payable as assistance to such family during such month;

(2) such amounts as are collected periodically which are in excess of any amount paid to the family under paragraph (1) which represent monthly support payments shall be retained by the State to reimburse it for assistance payments to the family during such period ...;

(3) such amounts as are in excess of amounts retained by the State under paragraph (2) and are not in excess of the amount required to be paid during such period to the family by a court

or administrative order shall be paid to the family; and

(4) such amounts as are in excess of amounts required to be distributed under paragraphs (1), (2), and (3) shall be (A) retained by the State ... as reimbursement for any past assistance payments made to the family for which the State has not been reimbursed or (B) if no assistance payments have been made by the State which have not been repaid, such amounts shall be paid to the family.

**4.** 42 U.S.C. § 602(a)(26) provides that as a condition of eligibility for AFDC, each applicant or recipient will be required:

(A) to assign the State any rights to support from any other person such applicant may have (i) in his own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and (ii) which have accrued at the time such assignment is executed.

If Justin's needs and share of AFDC money constitute, say, $150 a month, the support order should provide for reimbursement of that $150 plus the $50 which will go directly to assist Justin.

The State also argues on behalf of Woods that $155 a week was proper because Justin is entitled to be supported in a style commensurate with Humphrey's societal position. *Stutz v. Stutz* (1990), Ind. App., 556 N.E.2d 1346, 1352. The State's position is both appealing and axiomatic. The argument rings hollow, however, if Justin's mother receives only $50 a month, plus standard welfare disbursements regardless of how much Humphrey is made to pay. There is no apparent method by which Justin can be supported in a style commensurate with Humphrey's socioeconomic position under these particular circumstances. If the reimbursement system permitted additional assistance to Justin after AFDC had been repaid for the funds it spent on Justin, then the presumptive amount might well be appropriate.

### Conclusion

The decision of the Court of Appeals is vacated and the judgment of the trial court is reversed. We remand to the trial court to re-calculate support taking into account not only Justin's needs, but also those AFDC payments that Woods receives which are fairly attributable to Justin.

DeBRULER, GIVAN and DICKSON, JJ., concur.

KRAHULIK, J., dissents with opinion.

KRAHULIK, Justice, dissenting.

I respectfully dissent and vote to affirm the trial court's determination that the father failed to demonstrate that application of the guidelines would be unjust. In my view a father has a duty to support his children, whether such child is born in or out of wedlock. Additionally, the guidelines specifically provide that AFDC payments are not to be considered in determining the gross income of parents. In view of that provision, the trial court was correct in completely disregarding the effects of the AFDC repayment provision found in 42 U.S.C. § 602(a)(26) (1988). This repayment provision is akin to a subrogation provision found in an insurance policy. Such provisions typically require the one who receives the benefit to reimburse the benefit provider to the extent that the benefit recipient receives funds from a third party. Such provisions are not considered by a fact-finder in determining the amount of the liability of the third party. The majority opinion in this case holds, in essence, that application of this principle would be unjust to the father. I believe that disregarding this principle works a much greater injustice on the taxpayers of this State who now will not be reimbursed for their AFDC payments to this family. In choosing whether the father of this child or the taxpayers of the State should benefit, my vote is for the taxpayers. I would affirm the trial court's decision that the father should pay the full amount called for in the guidelines ·without regard to whether such payments will reimburse the State for the AFDC payments made to the child and the family in which he resides.