## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.


FILED

Apr 14 2016, 9:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Laurie Baiden Bumb
Bumb & Vowels, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Thomas A. Massey
Massey Law Offices, LLC
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David Patrick Walters,

*Appellant-Respondent,*

v.

Jessica R. (Walters) Wittman,

*Appellee-Petitioner.*

April 14, 2016

Court of Appeals Case No.
74A04-1508-DR-1297

Appeal from the Spencer Circuit Court
The Honorable Lucy Goffinet, Special Judge

Cause No. 74C01-1006-DR-371

**Bradford, Judge.**

## Case Summary

[1]     Appellant-Respondent David Walters ("Father") and Appellee-Petitioner Jessica Wittman ("Mother") (collectively, "the Parents") divorced in 2010, the marriage having produced two minor children ("the Children"). The final

dissolution decree provided that the Parents would share physical and legal custody, that Mother would be responsible for 80% of the Children's agreed controlled expenses,[1] and that Mother would pay $400.00 per month in child support.

[2] In June of 2014, Father moved to modify Mother's child support obligation on the basis that Parents' incomes had changed enough since the dissolution decree to warrant an increase. The next month, Mother petitioned to modify her child support obligation, proposing that she cover 100% of the Children's controlled expenses in exchange for relieving her of any child support obligation and that she have the final decision-making authority in matters arising out of the Parents' joint legal custody of the Children. Following a hearing, the trial court ordered that Mother be responsible for 100% of the Children's controlled expenses and that she pay no more child support to Father. At the same time, the trial court denied Mother's petition for final decision-making authority. Father appeals, contending that (1) several of the trial court's findings of fact were erroneous and did not support the conclusions made thereon, (2) the trial court erred in altering child support obligations without completing a child support obligation worksheet ("Worksheet"), (3) the trial court ordered a deviation from the presumptive child-support amount

---

[1] "Controlled expenses" are defined in the commentary to the Indiana Child Support Guidelines: "This type of expense for the child(ren) is typically paid by the custodial parent and is not transferred or duplicated. Controlled expenses are items like clothing, education, school books and supplies, ordinary uninsured health care and personal care." Child Supp. G. 6 cmty. ("Parenting Time Credit").

without sufficient justification. For purposes of this appeal, we restate Father's argument as whether the trial court erred in modifying Mother's child support modification. Mother cross-appeals, arguing that the trial court erred in denying her request to have final decision-making authority for issues involving the Children. We affirm in part, reverse in part, and remand with instructions.

## Facts and Procedural History

[3] On October 27, 2010, the marriage of Mother and Father was dissolved by the filing of an agreed decree ("the Decree"). At the time of the dissolution, Mother was self-employed as a dentist with a solo practice in Santa Claus, Indiana, with a gross income of $113,000.00, while Father was a high school math teacher with a gross income of $30,000.00. Pursuant to the Decree, Father received the marital residence, all equity therein, and a $20,000.00 property settlement from Mother. The parties agreed to share joint physical and legal custody of the Children, who were five and three at the time. Mother agreed to pay $400.00 per month in child support and 80% "of the children's agreed expenses for clothing, education, and agreed extracurricular activities." Appellant's App. p. 14.

[4] On July 9, 2014, Father sent Mother an email that stated, inter alia, "I am making clear that you may no longer assume my agreement to any clothing purchases[.]" Appellant's App. p. 45. Father's objections stemmed from Mother's expenditures of approximately $1000.00 for children's clothing over the previous two months. Communication between the parties over the next

several months became "sassy[.]" Tr. p. 46. Mother began sending Father $400.00 checks at the beginning of each of month with a summary of Father's 20% obligation instead of subtracting Father's obligation for the previous month from the check, as had been the parties' practice to that point. From July to December of 2014, Mother paid her $400.00 child support obligation to Father and submitted a monthly summary of expenses. Father, however, as of January of 2015, had not paid Mother his 20% share of controlled expenses since June of 2014.

[5]   Meanwhile, on June 11, 2014, Father petitioned the trial court to modify Mother's child support obligation on the basis that the parties' incomes had changed. On July 14, 2014, Mother petitioned the trial court to modify the terms of the Decree so that she was responsible for 100% of the Children's controlled expenses, no longer had any child support obligation, and had final decision-making authority in the event of a disagreement with Father over joint legal issues.

[6]   The trial court held a hearing on the parties' petitions on October 30, 2014, and January 23, 2015. Father testified that he was still employed as a high school teacher, with a yearly salary of $35,757.00. Mother submitted two Worksheets, one listing her 2013 income as $153,167.00 and the other listing an estimated income of $150,446.00 for 2014. The first Worksheet submitted by Mother indicated a presumptive weekly child support obligation for her of $162.61 and

the second a presumptive weekly obligation of $177.42.[2]  In a mortgage loan application submitted in November of 2013, Mother indicated monthly gross receipts from her dental practice of $14,605.00, or over $175,000.00 annually. Mother acknowledged that she was 100% owner of her dental practice and had withdrawn money for personal use from time to time, including $15,000.00 for a down payment on a house and $16,000.00 for other purposes.

[7]     For his part, Father submitted three Worksheets, all listing Mother's annual income as $175,000.00, one of which, Exhibit E, translated to a presumptive weekly child support obligation of $199.40 for Mother.  Exhibit E was prepared based on the assumptions that Mother would be responsible for all controlled expenses and that Father would receive a parenting time credit.  Father's Exhibits F and G indicated presumptive weekly child support obligations of $274.40 and $129.97, respectively.  Mother argued she should become responsible for 100% of the Children's controlled expenses but that her child support obligation should also be eliminated.  Mother testified that she believed that if her proposal were accepted, Father would have no cause for worry or concern about Mother's purchases for the Children.

---

[2]  Mother's two submitted Worksheets included a $70.00 expense for child care which (1) increased the total child support obligation of the parties, (2) she listed as a credit, and (3) she acknowledged at the hearing was no longer applicable.  Mother did not recalculate her final totals to reflect this, but a recalculation would have resulted in a somewhat increased child support obligation for Mother.

[8]     On May 26, 2015, the trial court issued its order on the parties' petitions, which provides as follows:

> COMES NOW THE COURT, having heard all pending issues in open court on October 30, 2014 and January 23, 2015, having reviewed evidence, motions and memorandum submitted by both parties, the COURT NOW FINDS AS FOLLOWS:
>
> *     *     *     *
>
> 7.     The Mother was responsible for eighty percent (80%) and the Father twenty percent (20%) of the children's agreed expenses for clothing, education, and extracurricular activities that the parties agreed too [sic].
>
> 8.     The Mother paid the Father Four Hundred Dollars ($400.00) per month in child support. The amount was an agreed deviation.
>
> 9.     Each month from the date of the final divorce decree until the Summer of 2014 the Mother would write the Father a check for child support minus the twenty percent (20%) obligation he would owe on the children's agreed expenses. The Mother would provide a summary of the expenses with the check.
>
> 10.     The Father accepted and cashed the checks from October 2010 until the summer of 2014.
>
> 11.     During this time Father never expressed that he thought the purchases the Mother made for the children were unnecessary or excessive.
>
> 12.     Father testified that up until the summer of 2014 the procedure for payment of support after the deduction was made without complaint.
>
> 13.     In July of 2014, after filing a Petition to Modify Child Support, Father stated to Mother that he would no longer agree to her purchasing clothing for the children.
>
> 14.     Father testified that Mother's spending was excessive.

15. Mother testified that her spending was reasonable and in no way deviated from how she purchased for the children in the past.

16. From July 2014 until December 2014 Mother paid Father Four Hundred Dollars ($400.00) in child support. She also provided a summary of expenses for the children each month.

17. Father testified that he has not reimbursed Mother twenty percent (20%) of the expenses between July 2014 and December 2014.

18. Mother admits that there have been months when her child support payment was late.

19. There has been a significant breakdown in communication between the parties since July of 2014.

20. Father testified that since the date of the divorce decree he has incurred over Thirty Thousand Dollars ($30,000.00) in credit card debt.

21. Father testified that he intends to purchase a five (5) bedroom house from his parents.

22. Mother testified that she has purchased a four (4) bedroom house.

23. Both parties continue to reside in Santa Claus, Indiana in very close proximity to each other.

24. Father testified that he wants to live in a home comparable to Mother's.

25. Father testified that his salary has "sky rocketed" since the date of the final divorce decree.[3]

---

[3] During cross-examination, when Mother's counsel asked Father if his income had increased since the divorce, Father replied, "Like a sky rocket." Tr. p. 81. In context, it is apparent that Father's description of the increase in his salary, which rose from $30,000.00 to approximately $36,000.00 in four years, was almost certainly sarcastic.

26. Mother testified that her salary has increased since the date of the final divorce decree.

27. The Father has been very unwilling to communicate with Mother in any matter that financially concerns the children.

28. The Mother wants to be one hundred percent (100%) responsible for all of the children's clothing, extracurricular, educational, child care, health insurance, and any uninsured medical dental, optometric, orthodontic and prescription expenses.

29. The Mother is requesting no child support be due and owing since she will be paying one hundred percent (100%) of the children's expenses.

30. The Father's only expense for the children would be for their food and entertainment while they were with him.

31. The Father offered no testimony as to why this arrangement would not be in the best interest of the children.

32. The Father testified that he wants child support to be increased and asked the Court to consider what was fair.

33. The Father's testimony was very conflicting as to what a fair increased child support amount would be.

34. The court finds this case unique in the circumstances in that the parties have never argued over unnecessary expenses under their negative child support calculation and their children have enjoyed a lifestyle similar to that as which they would have had if the parties had not divorced.

COURT NOW CONCLUDES AS FOLLOWS:

1. The parties currently live in the same neighborhood.

2. The parties exercise shared physical custody of the children.

3. The parties no longer communicate in a way that is in the best interest of the children regarding finances.

4.   Given the unique circumstances of this case, the Mother providing for one hundred percent (100%) of the children's expenses would be in the best interest of the children and would most likely put the children in a situation most similar to that as if the parents had not divorced.

5.   The Father's increased income would more than provide for the needs of the children, such as entertainment and food, while they are in his care.

6.   Each party has sufficient means to pay their own attorney fees.

7.   Father has not met his burden of proof in showing a need for increased child support due and owing to him in this case due to the unique circumstances in this matter and Mother's willingness to pay one hundred percent (100%) of the children's expenses.

8.   Neither party is found in direct contempt of Court.

9.   A deviation in the child support guidelines is in the best interest and welfare of the children in that [M]other's proposal would avoid conflict between the parties and allow the children to maintain a lifestyle in which they are accustomed and which they would have enjoyed had the parties not divorced.

COURT NOW ORDERS AS FOLLOWS:

1.   Each party shall be responsible for their own attorney fees.

2.   The Mother's shall be responsible to pay for one hundred percent (100%) of the children's expenses regarding education, clothing, extracurricular activities, child care, health insurance and all uninsured medical expenses including medical, dental, optometric, orthodontic, and prescription expenses.

3.   Mother is no longer required to pay Father monthly child support.

4.   Neither party is in contempt of Court.

5. Father's Petition for Modification of Child Support is Denied.

6. Mother's Petition for Joint Legal Custody but final decision Making is Denied.

7. The Court declines to Order monetary awards at this time.

8. All prior Orders of the Court shall remain in effect.

SO ORDERED THIS 26TH DAY OF MAY, 2015

Appellant's Br. pp. 36-39.

# Discussion and Decision

# I.  Direct Appeal Issue—Child Support

On review, "[a] trial court's calculation of child support is presumptively valid." *Young v. Young*, 891 N.E.2d 1045, 1047 (Ind. 2008) (citing *Kondamuri v. Kondamuri*, 852 N.E.2d 939, 949 (Ind. Ct. App. 2006)).  "[R]eversal of a trial court's child support order deviating from the appropriate guideline amount is merited only where the trial court's determination is clearly against the logic and effect of the facts and circumstances before the trial court." *Kinsey v. Kinsey*, 640 N.E.2d 42, 43 (Ind. 1994) (citing *Humphrey v. Woods*, 583 N.E.2d 133, 134 (Ind. 1991)).  Upon the review of a modification order, "only evidence and reasonable inferences favorable to the judgment are considered." *Kinsey*, 640 N.E.2d at 44 (string citation omitted).  The order will only be set aside if clearly erroneous. *Id.*

*Bogner v. Bogner*, 29 N.E.3d 733, 738 (Ind. 2015).

Father contends that the trial court deviated from what the child support order would be pursuant to the Indiana Child Support Guidelines ("the Guidelines") without sufficient justification.  Mother argues that the deviation is justified. The trial court seemed to base its disposition on three conclusions:  (1) its order

would decrease conflict between the parties, (2) it would allow the Children to have a lifestyle similar to the one they would have enjoyed had the parties not divorced, and (3) Father's increased income would allow him to easily provide for the Children's food and entertainment while staying with him.

[11] As mentioned, both parties acknowledge that the trial court's order represents a deviation from the Guidelines. The question, then, is whether the Guidelines' rebuttable presumption regarding child support has been sufficiently rebutted.

> Although application of the Guidelines yields a figure that becomes a rebuttable presumption, there is room for flexibility. Guidelines are not immutable, black letter law. A strict and totally inflexible application of the Guidelines to all cases can easily lead to harsh and unreasonable results. If a judge believes that in a particular case application of the Guideline amount would be unreasonable, unjust, or inappropriate, a finding must be made that sets forth the reason for deviating from the Guideline amount. The finding need not be as formal as Findings of Fact and Conclusions of Law; the finding need only articulate the judge's reasoning.

Child Supp. G. 1 cmty.

## A. Controlled Expenses

[12] As an initial matter, we note that neither Mother nor Father challenges the trial court's assignment of 100% of controlled expenses to Mother. In any event, we conclude that this assignment was justified by the trial court's findings and conclusions that such an assignment would ease conflict between the parties. To the extent that the parties are in conflict, that conflict appears to be based almost entirely on Father's objections to some of Mother's spending on

controlled expenses. Assigning 100% of the controlled expenses to Mother removes this source of conflict and strikes us as entirely reasonable under the circumstances.

## B. Parenting Time Credit

Father contends that the trial court erred in failing to award him the parenting time credit. Despite Father specifically arguing that he should be awarded the parenting time credit if Mother were assigned all of the Children's controlled expenses, the trial court did not award the credit to Father, nor did it specifically explain why it did not do so. Guideline 6 provides, in its entirety, that "[a] credit should be awarded for the number of overnights each year that the child(ren) spend with the noncustodial parent." Commentary provides considerable guidance as to how the somewhat bare-bones Guideline 6 should be applied in situations, such as this, where parenting time is equally shared:

> **Child Support When Parenting Time is Equally Shared.** A frequent source of confusion in determining child support arises in cases where parents equally share the parenting time with the children. Parenting time is considered equally shared when it is 181 to 183 overnights per year. To determine child support in these cases, either the mother or father must be designated as the parent who will pay the controlled expenses. Then, the other parent is given the parenting time credit. The controlled expenses remain the sole obligation of the parent for whom the parenting time credit is not calculated.
>
> When both parents equally share parenting time, the court must determine which parent will pay the controlled expenses. If, for example, father is the parent paying controlled expenses, the parenting time credit will be awarded to the mother.

\* \* \* \*

> Once the court assigns responsibility for these controlled expenses, the court should award the other parent the parenting time credit. When the assignment of the controlled expenses occurs, calculation of the child support in shared custody situations is fairly basic, and is completed by application of the remainder of these Guidelines.

[14] While we recognize that the Guidelines are not black letter law, the commentary to Guideline 6 is particularly emphatic that when one parent is made responsible for all controlled expenses, the other is to be given the parenting time credit. This was not done here, and we conclude that the trial court's apparent reasons for failing to do so are insufficient.

[15] The trial court seems to have eliminated Mother's child support obligation, at least in part, based on its conclusion that Father's income had increased significantly since the dissolution. The record and Guidelines, however, do not support this basis. While Father's income did increase from 2010 to 2014, the increase can only be described as modest and, in any event, fell far short of keeping pace with the increase in Mother's income over the same period. Father's yearly income increased from $30,000.00 in 2010 to $35,757.00 in 2014, an increase of 19%, or less than 5% a year. Over the same period, Mother's yearly income increased from $113,000.00 to somewhere in the neighborhood of $150,000.00 to $175,000.00,[4] an increase of 33% to 55%, or approximately 8% to 14% a year. Over the four years at issue, Father's income

---

[4] The trial court made no finding regarding Mother's yearly salary.

as a percentage of weekly adjusted income for both parties decreased from 21% to as little at 17%. In any event, even if Father's income *had* increased substantially since the dissolution, the increase would be reflected in an increase of his basic child support obligation and a corresponding decrease in his parenting time credit. The Guidelines do not indicate that complete elimination of the parenting time credit is warranted in this case.

[16] The trial court seemingly also eliminated Mother's child support obligation in order to compensate her for assumption of 100% of the Children's controlled expenses. This basis is also not supported by the record or the Guidelines. The record indicates that Father's 20% share of controlled expenses averaged $122.05 per month from January of 2011 to June of 2014, far less than the $400.00 per month Mother was paying in child support. In other words, eliminating Mother's child support obligation entirely as compensation for her assumption of Father's 20% of controlled costs results in a windfall for Mother.

[17] The trial court's disposition was seemingly based only on consideration of the controlled expenses while failing to properly take into account the two other categories of parenting expenses—transferred and duplicated—that the parenting time credit is specifically designed to account for.

> **Transferred Expenses.** This type of expense is incurred only when the child(ren) reside(s) with a parent and these expenses are "transferred" with the child(ren) as they move from one parent's residence to the other. Examples of this type of expense are food and the major portion of spending for transportation. When spending is transferred from one parent to the other parent, the

other parent should be given a credit against that parent's child support obligation since this type of expense is included in the support calculation schedules. When parents equally share in the parenting, an assumption is made that 35% of the Basic Child Support Obligation reflects "transferred" expenses. The amount of expenses transferred from one parent to the other will depend upon the number of overnights the child(ren) spend(s) with each parent.

**Duplicated Fixed Expenses.** This type of expense is incurred when two households are maintained for the child(ren). An example of this type of expense is shelter costs which are not transferred when the child(ren) move(s) from one parent's residence to the other but remain fixed in each parent's household and represent duplicated expenditures. The fixed expense of the parent who has primary physical custody is included in the Guideline support schedules. However, the fixed expense of the other parent is not included in the support schedules but represents an increase in the total cost of raising the child(ren) attributed to the parenting time plan. Both parents should share in these additional costs.

When parents equally share in the parenting, an assumption is made that 50% of the Basic Child Support Obligation will be "duplicated."

Child Supp. G. 6 cmty. Put another way, while the Guidelines contemplate that transferred and duplicated expenses will be shared by parents (*i.e.*, 85% of each parent's basic child support obligation will be transferred and duplicated expenses), the Guidelines do *not* contemplate that those expenses will be shared *equally*. Because we conclude that neither the record in this case nor the Guidelines supports the denial of the parenting time credit to Father, we reverse that portion of the trial court's order and remand with instructions to recalculate the parties' child support obligations.

# C. Child Support Calculation

[18] As previously mentioned, both Mother and Father submitted multiple Worksheets, all of which indicated an obligation by Mother, with Mother's Worksheets indicating a weekly obligation of either $162.61 or $177.42 and Father's indicating a weekly obligation of either $199.40, $274.40, or $129.97. Father primarily advocated adoption of the Worksheet that produced a weekly obligation of $199.40, as that was based upon awarding him the parenting time credit, which we have already concluded should have been done.

[19] The differences between the obligations generated by Father's Exhibit E and Mother's two submissions reflects the use of different values for Father's and Mother's weekly gross incomes and what amount Mother pays for the Children's health insurance. As for Father's weekly gross income, the figure of $35,757.00 for Father's yearly income is not disputed and should be used in any child support calculations.[5] Mother's weekly gross income *is* disputed, however. Mother presented evidence that her estimated yearly income was approximately $150,000.00 for 2014 while Father presented evidence that Mother submitted a mortgage loan application in late 2013 listing the yearly receipts from her dental practice at $175,000.00. On remand, it will be necessary for the trial court to make a finding regarding Mother's weekly gross income. Finally, Mother lists the weekly amount she pays for the Children's

---

[5] Mother admitted at the hearing that the $36,000.00 figure used on her worksheets was an estimate. (Tr. 138).

health insurance premiums as $64.62, while Father lists it as $65.00. It will be necessary to determine an exact amount for purposes of recalculating the parties' child support obligations.

[20] In summary, because we have concluded that the trial court erred in denying Father the parenting time credit, we reverse the trial court's order eliminating Mother's child support obligation and remand for recalculation. If, after recalculation, the trial court determines that imposing the presumptive child support "would be unreasonable, unjust, or inappropriate, a finding must be made that sets forth the reason for deviating from the Guideline amount." Child Supp. G. 1 cmty. We recognize that the Guidelines afford the trial court considerable flexibility for deviation from the presumptive child support obligation, provided that the trial court's reasoning is articulated. *See id.*

## II. Cross-Appeal Issue—Final Decision Making Authority

[21] Mother contends that the trial court erred in denying her request for final decision making authority over "joint legal issues" having to do with the Children. Appellant's App. p. 26. Mother argues that Father's alleged unreasonableness concerning the dispute over her clothing purchases for the Children necessitates giving her the final say in all disputes arising from the parties' joint legal custody. We cannot agree. The record indicates that the dispute between Mother and Father was limited to her spending on clothing, a relatively minor dispute that should be resolved by assigning 100% of the

controlled expenses to Mother. The trial court did not err in denying Mother's request for final decision making authority over all joint custody issues.

# Conclusion

[22] We conclude that the trial court correctly assigned 100% of the controlled expenses to Mother. We conclude, however, that the trial court erred in granting Mother's motion to eliminate her child support obligation in return. Specifically, the trial court erred in denying Father the parenting time credit. Consequently, we remand with instructions to recalculate the parties' child support obligations consistent with this memorandum decision. Finally, we conclude that the trial court did not err in denying Mother's request for final decision making authority over all joint custody issues.

[23] We affirm the judgment of the trial court in part, reverse in part, and remand with instructions.

[24] Bailey, J., and Altice, J., concur.