## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 13 2019, 8:40 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kelley Yeager Baldwin
Yeager Good & Baldwin
Shelbyville, Indiana

ATTORNEY FOR APPELLEE

Nicole A. Zelin
Pritzke & Davis, LLP
Greenfield, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Eric L. Fields,

*Appellant-Petitioner,*

v.

Lindsay N. Slaven,

*Appellee-Respondent.*

March 13, 2019

Court of Appeals Case No.
18A-JP-2032

Appeal from the Hancock Circuit Court

The Hon. R. Scott Sirk, Judge

Trial Court Cause No.
30C01-1702-JP-63

**Bradford, Judge.**

# Case Summary

[1] Appellant-Petitioner Eric Fields ("Father") is the biological father of A.F., born to Appellee-Respondent Lindsay Slaven ("Mother") in 2013. In late 2016, Mother and Father ended their romantic relationship and Mother moved out with A.F. In February of 2017, Father petitioned to establish his paternity of A.F. In July of 2018, the trial court issued its final order, which (1) established Father's paternity of A.F., (2) awarded primary physical custody of A.F. to Mother, (3) set a parenting-time schedule, (4) ordered Father to pay $173.50 per week in child support, (5) made child support retroactive to the filing of the paternity petition, and (6) ordered Father to pay half of A.F.'s uninsured medical expenses through July of 2018. Father contends that the trial court abused its discretion in awarding Mother primary physical custody of A.F. and in setting the parenting-time schedule. Father also contends that the trial court erred in calculating his child-support obligation and making it retroactive and in ordering him to pay for half of A.F.'s uninsured medical expenses through July of 2018. Because we disagree with all of Father's contentions, we affirm.

# Facts and Procedural History

[2] Mother and Father began dating in February of 2009 and, on June 22, 2013, Mother gave birth to A.F. Mother and Father agreed that Mother would leave her job at the prosecutor's office to stay home and care for A.F. Mother scheduled all of A.F.'s medical appointments, paid for all her medical care, and purchased all of her clothing. During the first two years of A.F.'s life, Father

was a police officer with the Greenfield Police Department, working third shift and sleeping during the day. At the time, Father also operated Fields Tree Service, which he had founded. Eventually, Father left the police department to work for Fields Tree Service full time.

[3] Mother and Father continued to reside together with A.F. until November of 2016, when Mother and A.F. moved out of Father's home, eventually settling into an apartment. On February 17, 2017, Father petitioned to establish his paternity of A.F. In the months following November of 2016, A.F. lived with Mother, and Father spent time with A.F. while Mother was at work but did not exercise any overnight parenting time.

[4] On May 19, 2017, a preliminary hearing was held, after which the trial court adopted a provisional agreement the parties had reached, in which the parties apparently agreed that Father would pay $175.00 per week in child support. On July 9, 2017, the trial court entered a temporary order providing Father regular parenting time with A.F. and holiday parenting time as agreed upon by the parties or, in the absence of an agreement, pursuant to the holiday parenting-time schedule set forth in the Indiana Parenting Time Guidelines ("the Guidelines"). The temporary order also provided that, retroactive to May 19, 2017, Father would pay $175.00 per week in child support directly to Mother.

[5] On January 3, June 11, and July 9, 2018, the trial court held a final hearing. Father testified that he was a 34% owner of Fields Tree Service and was paid $1000.00 per week. In 2017, Father received $59,000.00 from Fields Tree

Service.  Christopher Borgman testified that he owned fifteen percent of Fields Tree Service and received $1000.00 per month from the business.  Mother testified that although she is a 51% owner of Fields Tree Service, she had done no work for and had received no compensation from the business since leaving Father in November of 2016.  Mother submitted two child support obligation worksheets, one of which, Exhibit M, calculated Father's weekly income at $1634.00.  The income figure is based on the $59,000.00 Father received from Fields Tree Service in 2017 and a depreciation expense of $25,952.04 allocated to him as additional income.

[6]     On July 24, 2018, the trial court entered its order establishing paternity in Father and awarding Mother primary physical custody of A.F.  The trial court ordered that Father was to exercise parenting time with A.F. from 6:00 p.m. on Friday through 6:00 p.m. on Sunday on alternate weekends and on Wednesday evenings for up to four hours.  Additionally, the trial court ordered that Father was to have the opportunity to care for A.F. whenever Mother was working and that Father could pick her up directly from school.  As for holidays and special days, the trial court ordered that each party was to have holiday/special days and extended parenting time as provided for in the Guidelines, as amended in January of 2017 or thereafter.  Finally, the trial court ordered that Father pay child support of $173.50 per week (based on an income of $1634.00 per week), that child support be retroactive to the filing of the paternity petition, and that Father pay half of A.F.'s uninsured medical expenses through July of 2018.

# Discussion and Decision

## I. Primary Physical Custody

Father contends that the trial court abused its discretion in awarding Mother primary physical custody of A.F., arguing that it should have awarded him at least joint physical custody, if not primary physical custody. Once paternity has been established in a paternity action,

> [t]he court shall determine custody in accordance with the best interests of the child. In determining the child's best interests, there is not a presumption favoring either parent. The court shall consider all relevant factors, including the following:
>
> (1) The age and sex of the child.
>
> (2) The wishes of the child's parents.
>
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
>
> (4) The interaction and interrelationship of the child with:
>
> > (A) the child's parents;
> >
> > (B) the child's siblings; and
> >
> > (C) any other person who may significantly affect the child's best interest.
>
> (5) The child's adjustment to home, school, and community.
>
> (6) The mental and physical health of all individuals involved.
>
> (7) Evidence of a pattern of domestic or family violence by either parent.
>
> (8) Evidence that the child has been cared for by a de facto custodian[.]

Ind. Code § 31-14-13-2.

[8]    That said,

> [a] child custody determination falls within the sound discretion of the trial court, and its determination will not be disturbed on appeal absent a showing of abuse of discretion. *In Re Guardianship of R.B.*, 619 N.E.2d 952, 955 (Ind. Ct. App. 1993). We are reluctant to reverse a trial court's determination concerning child custody unless the determination is clearly erroneous and contrary to the logic and effect of the evidence. *Id.* We do not reweigh evidence nor reassess witness credibility, and we consider only the evidence which supports the trial court's decision. *Wallin v. Wallin*, 668 N.E.2d 259, 261 (Ind. Ct. App. 1996).

*Spencer v. Spencer*, 684 N.E.2d 500, 501 (Ind. Ct. App. 1997). Although the trial court here did not make detailed findings supporting its custody determination, we have concluded that these are not required. *In re Marriage of Ford*, 470 N.E.2d 357, 363 (Ind. Ct. App. 1984) ("[T]he statute only requires that the court *consider* all relevant factors. Specific findings on each of the listed factors are not required."), *trans. denied*. Moreover, "we will affirm the judgment of the trial court on any basis that the record will sustain." *Sasso v. Warsaw Orthopedic, Inc.*, 45 N.E.3d 835, 840 (Ind. Ct. App. 2015), *trans. denied*.

[9]    Father contends that the trial court abused its discretion in granting Mother primary physical custody of the now-five-year-old A.F. To get straight to the point, we conclude that Father has not established that Mother has fallen short as A.F.'s primary caregiver, a role which she has filled since A.F.'s birth in 2013. Soon after A.F.'s birth, Mother and Father agreed that Mother would leave her job at the prosecutor's office to stay home and care for A.F., which she did for over three years. During A.F.'s infancy and toddler years, Mother

scheduled and paid for all of her medical appointments; purchased all of her clothes; bathed, fed, and cleaned up after her; took care of her; and played with her. In contrast, during the first two years of A.F.'s life, Father worked third shift which necessitated that he slept during the day. While Father and Mother lived together, Father also owned and operated Fields Tree Service, demanding even more of his time.

[10] The record also supports a conclusion that Mother has provided A.F. with a safe, comfortable, stable, and nurturing environment since her relationship with Father ended. After moving out of Father's home, Mother has maintained consistent employment, allowing her to support and now provide medical insurance to A.F. Since March of 2018, Mother and A.F. have been living with Mother's boyfriend and his three children, a move that has caused A.F. to "grow[] immensely." Tr. Vol. III p. 17. Mother and A.F.'s current living arrangement provides A.F. with consistency and routine. Mother plans to enroll A.F. in the Greenfield school system, which would allow her to maintain relationships with her preschool classmates. In summary, there is ample evidence that Mother is an excellent parent, well able to provide for, and otherwise care for, A.F.

[11] Father points to evidence that A.F. is close to Father's other child and that Mother has "exposed" A.F. to her relationships with other men. The trial court, however, is in the best position to assign the appropriate weight to this evidence, and, as mentioned, we will not reweigh it. *See Spencer*, 684 N.E.2d at 501. Father has failed to establish an abuse of discretion in this regard.

# II. Parenting Time

Father contends that the trial court abused its discretion in not awarding him more parenting time. "A noncustodial parent is entitled to reasonable parenting time rights unless the court finds, after a hearing, that parenting time might […] endanger the child's physical health and well-being; or […] significantly impair the child's emotional development." Ind. Code § 31-14-14-1. As Father notes, the Guidelines "are applicable to […] paternity cases and cases involving joint legal custody where one person has primary physical custody." Ind. Parenting Time Guidelines, Preamble (C)(1).

> [D]ecisions involving visitation rights are committed to the sound discretion of the trial court and will be reversed on appeal only upon a showing of an abuse of discretion. *Matter of Paternity of Joe* (1985), Ind. App., 486 N.E.2d 1052, 1055.
>
>> "An abuse of discretion exists, as a general rule, where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the trial court or the reasonable, probable and actual deductions to be drawn therefrom. *K.B. v. S.B.* (1981), Ind. App., 415 N.E.2d 749. Put differently, this court will find no abuse of discretion if there is substantial probative evidence to support the conclusion of the trial court. *Griffith v. Webb* (1984), Ind. App., 464 N.E.2d 384.... The trial court's discretion is limited in a case such as the present case, however, to the extent that it must be exercised in furtherance of the child's best interests."
>
> *Matter of Joe*, 486 N.E.2d at 1055.

*Matter of Paternity of A.R.R.*, 634 N.E.2d 786, 788–89 (Ind. Ct. App. 1994).

[13]     As mentioned, the trial court ordered that Father was to have Guideline-mandated parenting time with A.F., having her every other weekend and for four hours every Wednesday evening. *See* Parent. G. (II)(D). Additionally, the trial court ordered that Father was to have the opportunity to care for A.F. whenever Mother was working on weekdays, without limitation.

[14]     Father's argument is premised on his claim that he was awarded only the bare minimum parenting time allowed by the Guidelines, which, as seen above, is not the case. That said, Father seems to argue that the trial court should have awarded him additional overnight parenting time on alternate Sundays and every Wednesday, so as to eliminate the need to return A.F. to Mother's in the evening only to have to pick her up again the next morning. While Father is correct that the current schedule involves some extra driving on his part when A.F. is not in school, it is worth noting that to the extent that this is an issue, it is only because Father has already been granted additional parenting time during the week.

[15]     As Mother points out, there is no evidence that the temporary schedule (which is similar to the one in the final order) caused A.F. any problems or was unduly inconvenient for either parent. Moreover, even with A.F. having started kindergarten in the Fall of 2018, Father will still have parenting time with her every day after school, time which is, again, in excess of what Father is entitled to pursuant to the Guidelines. In the end, we see the trial court's order as reasonably accommodating the needs of all while allowing Father to have

significantly more parenting time with A.F. than provided by the Guidelines. Father has failed to establish an abuse of discretion in this regard.

## III. Child Support and Medical Payments

[16]     Finally, Father contends that the trial court erred in (1) setting his child-support obligation, (2) ordering it to be retroactive to February 17, 2017, and (3) ordering him to pay one-half of A.F.'s uninsured medical expenses through July 9, 2018.

> On review, "[a] trial court's calculation of child support is presumptively valid." *Young v. Young*, 891 N.E.2d 1045, 1047 (Ind. 2008) (citing *Kondamuri v. Kondamuri*, 852 N.E.2d 939, 949 (Ind. Ct. App. 2006)). "[R]eversal of a trial court's child support order deviating from the appropriate guideline amount is merited only where the trial court's determination is clearly against the logic and effect of the facts and circumstances before the trial court." *Kinsey v. Kinsey*, 640 N.E.2d 42, 43 (Ind. 1994) (citing *Humphrey v. Woods*, 583 N.E.2d 133, 134 (Ind. 1991)). Upon the review of a modification order, "only evidence and reasonable inferences favorable to the judgment are considered." *Kinsey*, 640 N.E.2d at 44 (string citation omitted). The order will only be set aside if clearly erroneous. *Id.*

*Bogner v. Bogner*, 29 N.E.3d 733, 738 (Ind. 2015).

## A. Amount of Child Support

[17]     Father contends that the trial court erred in finding that he has $1634.00 per week in gross income. While Father acknowledges that he received $59,000.00 from Fields Tree Service in 2017, he claims that it was error to assign him the entire depreciation expense for 2017 of $25,952.04 when he only owns 34% of the business. Despite Father's minority interest in Fields Tree Service, there is

ample evidence that the other owners have little to do with the business and receive relatively little or no benefit from it. The name of the business is, after all, "Fields Tree Service," and Father testified that he founded the company and only made Mother a majority owner because his position as a policeman at the time prevented him from owning a business. Mother has had no involvement with Fields Tree Service since 2016 and Borgmann's duties seem to be limited to some bookkeeping, or "reconciling the checkbook." Tr. Vol. II p. 82. As for benefitting from the operation of Fields Tree Service, Father received $59,000.00 from the business in 2017, Borgmann received $12,000.00, and Mother received nothing. Despite who the owners of Fields Tree Service are on paper, all indications are that Father essentially runs the business with no input from Mother and little from anyone else, while receiving far more financial benefit than any other person, including Mother, who gets nothing. Under the circumstances, we cannot say that the trial court erred in allocating the entire depreciation expense of $25,952.04 to Father for purposes of calculating his income.[1]

## B. Retroactivity

[18]     Father also contends that the trial court erred in ordering his child-support obligation to be retroactive to February 17, 2017, the date on which he petitioned for paternity of A.F. Father's argument is essentially that he was

---

[1] Father also claims that 34% of the Fields Tree Service's loss of approximately $8000.00 for 2017 should be deducted from his income. Father does not explain precisely why or how the business's loss should reduce his personal income.

providing enough care to A.F. between February 17 and May 19, 2017, that he should be relieved of any child support obligation for that period. If anything, however, the record indicates that Father was exercising less parenting time with A.F. before May 19, 2017, than he was after, when visitation pursuant to the Guidelines was started. Mother testified that for approximately seven months following November of 2016, Father spent time with A.F. while Mother was at work but did not exercise any overnight parenting time. After May 19, 2017, Father got that parenting time along with every other weekend and one evening a week. Although Father argues that he gave Mother thousands of dollars after November of 2016, even if we assume that this is true there is no evidence to establish that this went specifically to A.F.'s care. Indeed, the only specific expense identified by Father for which he gave Mother money was so that she could make some car payments. Father has failed to establish that the trial court's order making Father's child-support obligation retroactive to the date of his filing of the paternity petition is erroneous.[2]

## C. Uninsured Medical Expenses

[19] Finally, Father contends that the trial court erred in ordering Father to pay for one-half of A.F.'s uninsured health-care expenses through July 9, 2018. Father

---

[2] Father also contends that even if the trial court correctly made his child support obligations retroactive to February 17, 2017, the amount should have been $173.50 per week, as in the final order, instead of the $175.00 per week he paid pursuant to the provisional order. We note that prevailing on this argument would reduce his obligation $1.50 per week for thirteen weeks, or $19.50 altogether. In any event, it does not seem as though Father made this argument below. It is well-settled that "[i]ssues not raised before the trial court […] cannot be argued for the first time on appeal and are waived." *Dunaway v. Allstate Ins. Co.*, 813 N.E.2d 376, 387 (Ind. Ct. App. 2004).

supports this contention with his testimony that it was his understanding that his child-support payments from the temporary order were supposed to cover all of A.F.'s expenses, including medical expenses. In the absence of any authority or other evidence to support this contention, however, Father's understanding does not establish that the trial court erred. In any event, Father does not explain how his fixed child-support payments were—or could have been—calculated to account for the inherently unpredictable medical needs of a young child like A.F. with any reasonable accuracy. Father has failed to establish error in this regard.

# Conclusion

[20] We conclude that the trial court did not abuse its discretion in awarding primary physical custody of A.F. to Mother or in crafting a parenting-time schedule. We further conclude that the trial court did not err in ordering Father to pay $173.50 per week in child support, make child-support payments retroactive to February 17, 2017, or pay for half of A.F.'s uninsured medical expenses through July 9, 2018.

[21] The judgment of the trial court is affirmed.

Bailey, J., and Brown, J., concur.